Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARJUN SUD,<br><br>              Plaintiff,<br><br>       v.<br><br>NESS USA, INC.,<br><br>              Defendant. | Civil Action No.: 21-12330 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter arises out of the termination of Plaintiff Arjun Sud's employment with Defendant Ness USA, Inc. Defendant moves to dismiss Counts 1, 2, and 3 of the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 8). The Court has considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

   **A.    Factual Background**

Plaintiff is a former employee of Ness. (D.E. No. 1, Notice of Removal, Ex. A, Amended Complaint ("Am. Compl.") ¶¶ 6 & 19). In early 2018, Plaintiff's then-current employer was acquired by an affiliated entity of Defendant, Ness Technologies S.ar.l. (*Id.* ¶ 8). In connection with that acquisition, and pursuant to a March 14, 2018 Offer Letter executed by the parties, Plaintiff accepted a management position with Ness to manage the legacy business of the acquired company. (*Id.*; *see also* D.E. No. 10, Ex. B, Offer Letter). The Offer Letter set forth the terms of

Plaintiff's employment with Ness, including the nature of the parties' employment relationship. Specifically, in a section titled "Employment-At-Will," the Offer Letter provided:

> Your employment with the Company is on an at-will basis. Subject to the Notice of Termination provisions below, you or the Company may terminate your employment, with or without cause, at any time.

(Offer Letter § 5). The "Notice of Termination" provision of the Offer Letter, in turn, provided, in relevant part:

> Except in cases of termination by the Company for Cause (as defined below), the Company will provide you with two-weeks' advance notice of termination of employment or base salary in lieu of notice for the duration of the notice period.

(*Id.* at § 6).

In addition to the Offer Letter, the parties executed a separate "Special Award" agreement—hereinafter referred to as the "Earn-Out Award Agreement"—providing Plaintiff with the opportunity to earn an Earn-Out Award upon the satisfaction of certain conditions. *See* Am. Compl. ¶¶ 9–10; *see also* D.E. No. 10, Ex. A, Earn-Out Award Agreement). In essence, the Earn-Out Award Agreement provided that, if certain "2019 Earn-Out Revenue" exceeded $40 million, Plaintiff would be credited with an Earn-Out Award in the form of "notational Earn-Out Units" representing shares of Ness Technologies common stock valued between $250,000 and $400,000.[1] (Am. Compl. ¶¶ 11–12; *see also* Earn-Out Award Agreement § A). Actual payment of the Earn-Out Award was only to be made upon the closing of a Change of Control (the "Earn-Out Payment Date"); however, in order for Plaintiff to receive the Earn-Out Award, the Agreement provided that Plaintiff must have remained employed through the Earn-Out Payment Date. (Am. Compl. ¶

---

[1] The Earn-Out Award Agreement does not define the terms "2019 Earn-Out Revenue" or "Earn-Out Units." Instead, these terms are apparently defined in a separate "Purchase Agreement" setting forth the terms of the acquisition of Plaintiff's former employer by Ness Technologies. (*See* Earn-Out Award Agreement § A). The Purchase Agreement was neither attached to the Amended Complaint nor filed in connection with Defendant's motion.

13; *see also* Earn-Out Award Agreement § A). The Earn-Out Award Agreement made clear that "[i]f [Plaintiff's employment end[ed] for any reason prior to the Earn-Out Payment Date, [Plaintiff would] immediately forfeit any right or entitlement to the Earn-Out Award or payment in receipt of [his] Earn-Out Units." (Earn-Out Award Agreement § A). There was one notable exception to the requirement that Plaintiff remain employed by Defendant through the Earn-Out Payment Date in order to receive payment of his Earn-Out Award: upon the execution of a release by Plaintiff, if he was terminated without cause by Defendant after January 1, 2020, but prior to the Earn-Out Payment Date, Plaintiff was entitled to a lump sum cash payment equal to 80% of the value of the Earn-Out Units credited to him, payable on the date of Plaintiff's termination from employment. (*Id.*; *see also* Am. Compl. ¶ 14).

The Earn-Out Award Agreement explicitly stated that it was not intended to change Plaintiff's status as an "at-will" employee of Defendant. (Earn-Out Award Agreement § C). In addition, the Agreement stated that its terms were "in addition to, and not in substitution for," the provisions of the Offer Letter. (*Id.* at 1).

On or about June 25, 2019, following the birth of his first child, Plaintiff raised the possibility of taking extended family leave with his supervisor and Ness's human resources manager. (Am. Compl. ¶¶ 34–35). These conversations apparently continued for several weeks throughout the summer until August 21, 2019, when Plaintiff sought approval to use five weeks of accrued paid time-off in addition to an unspecified amount of unpaid time-off to care for his son. (*Id.* ¶¶ 37–41). Plaintiff alleges that during this time, his supervisor, the manager of Ness's human resources department, and Ness's chief information officer considered eliminating his position, and that his supervisor ultimately decided to terminate Plaintiff's employment. (*Id.* ¶¶ 36 & 42).

On September 13, 2019, Defendant informed Plaintiff that it was terminating his employment, without cause, effective October 31, 2019 and offered him a severance package. (*Id.* ¶ 19). Upon receiving notice of his termination, Plaintiff contacted Defendant's human resources department to inquire about the payment of the Earn-Out Award. (*Id.* ¶ 22). It is unclear whether Plaintiff ever received a response to his inquiries. On October 23, 2019, Defendant informed Plaintiff that he was being terminated due to his poor work performance, withdrew its offered severance package, and has refused to pay Plaintiff the Earn-Out Award. (*Id.* ¶¶ 23 & 29).

      **B.**      **Procedural History**

Plaintiff commenced this action by filing a complaint against Defendant in the Superior Court of New Jersey, Law Division, Bergen County on June 1, 2020 alleging claims for "wage theft," breach of contract, and breach of the implied covenant of good faith and fair dealing. (*See* D.E. No. 1, Notice of Removal ¶ 1). On May 21, 2021, Plaintiff filed the Amended Complaint, adding claims for alleged violations of the New Jersey Family Leave Act and the federal Family and Medical Leave Act. (*Id.* ¶ 2). Defendant timely removed the action to this Court on the basis of federal question and supplemental jurisdiction. (*Id.* ¶¶ 6 & 10).

**II.**      **LEGAL STANDARD**

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).[2]

### III. DISCUSSION

Defendant moves to dismiss Counts 1, 2, and 3 of the Amended Complaint asserting claims for "wage theft," breach of contract, and breach of the implied covenant of good faith and fair dealing, respectively. The Court will address each claim in turn.

#### A. Count 1—Wage Theft

In Count 1 of the Amended Complaint, Plaintiff asserts a claim for "wage theft" under both New York and New Jersey "wage theft laws." (Am. Compl. ¶¶ 45–47). However, in his opposition to Defendant's motion, Plaintiff appears to abandon any reliance on New York law and urges the Court to consider and apply only New Jersey law to his claims. (D.E. No. 12 ("Opp. Br.") at 6). The Court will therefore only consider whether Plaintiff has stated a claim under

---

[2]   For this reason, the Court will consider the terms of the Offer Letter and the Earn-Out Award Agreement, which were referenced in the Amended Complaint.

applicable New Jersey law. Aside from vague references to "wage theft laws," however, the Amended Complaint does not cite to a specific statute or provision of New Jersey law that Defendant has allegedly violated. Nonetheless, based on Plaintiff's opposition brief, it appears that Plaintiff has intended to assert a claim under New Jersey's Wage Payment Law, N.J.S.A. § 34:11-4.1, *et. seq.* (*Id.* at 6–10). The Court will analyze Count 1 and the supporting allegations as such.

The essence of Plaintiff's claim appears to be that the Earn-Out Award constituted "wages" under the Wage Payment Law that were due to be paid upon his termination. The Court disagrees.

The threshold issue is which of two definitions of "wages" applies. Defendant argues that the Wage Payment Law itself defines wages as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis *excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto*," N.J.S.A. § 34:11-4.1(c) (emphases added), and that under this definition, the Earn-Out Award clearly does not fall within the meaning of employee "wages." (D.E. No. 9 ("Mov. Br.") at 14–15). Plaintiff responds by arguing that the Wage Payment Law's definition of "wages" applies only to the statute's requirements with respect to bi-weekly wage or salary payments and not the sort of one-off bonus payments at issue here. (Opp. Br. at 6–8). Plaintiff instead points to a separate provision of the New Jersey Wage Collection Law, N.J.S.A. § 34:11-57, *et seq.* (*id.* at 9), which broadly defines "wages" as "any moneys due an employee from the employer whether payable by the hour, day, week, semimonthly, monthly or yearly and shall include commissions, bonus, piecework compensation and any other benefits arising out of an employment contract." N.J.S.A. § 34:11-57.

6

The Court agrees with Defendant—the Wage Payment Law's definition of "wages" set forth in N.J.S.A. § 34:11-4.1(c) governs Plaintiff's claim. There is no basis for interpreting § 34:11-4.1(c)'s definition of "wages" as narrowly as Plaintiff suggests—to apply only to the statute's requirements with respect to bi-weekly wage or salary payments. Indeed, § 34:11-4.1 itself makes clear that the definitions provided therein apply to the usages of the terms so defined throughout the entire Wage Payment Law. *See* N.J.S.A. § 34:11-4.1 (providing definitions for terms "[a]s used in this act"). This includes not just the law's requirements with respect to bi-weekly pay, but also to the provisions cited by Plaintiff prohibiting an employer from, among other things, knowingly failing to pay the full amount of wages to an employee as required by either the statute or an employment contract. *See* N.J.S.A. § 34:11-10(a); (*see also* Opp. Br. at 7–8). Moreover, as at least one other court in this district has likewise found, § 34:11-57's broader definition of "wages" applies to investigations of wage claims by the Commissioner of Labor and Workforce Development under the Wage Collection Law and *not* to private lawsuits asserting claims under the distinct Wage Payment Law. *See Carita v. Mon Cheri Bridals, LLC*, No. 10-2517, 2012 WL 2401985, at *11 (D.N.J. June 25, 2012).

Here, the Earn-Out Award falls outside the purview of § 34:11-4.1(c)'s definition of "wages" because it is a bonus or other supplementary incentive calculated independently of Plaintiff's regular wages. Moreover, even if the Earn-Out Award or some portion thereof were considered a "wage" under the Wage Payment Law, it is equally clear that payment of the Award was not "due" within the meaning of the statute or the Earn-Out Award Agreement. The Earn-Out Award Agreement expressly conditions payment of the Earn-Out Award on Plaintiff's continued employment with Defendant through at least January 1, 2020 and made clear that if Plaintiff's employment ended "for any reason" prior to January 1, 2020, he would forfeit any right

7

or entitlement to any portion of the Earn-Out Award. (*See* Earn-Out Award Agreement § A). Thus, under the terms of the Earn-Out Award Agreement, Plaintiff was ineligible for the Earn-Out Award and cannot recover any portion thereof under the Wage Payment Law. *See Bintliff-Ritchie v. Am. Reinsurance Co.*, No. 05-2802, 2007 WL 556895, at *5 (D.N.J. Feb. 15, 2007) (dismissing claim under Wage Payment Law for amounts due under annual incentive bonus plan where plaintiff was fired prior to payment of bonus and rendered ineligible to receive payment thereof as a result under terms of incentive plan); *see also Soranno v. Heartland Payment Sys., LLC*, No. 18-16218, 2020 WL 5652469, at *12 (D.N.J. Sept. 23, 2020) ("The plain language of the statute makes clear that the [Wage Payment Law] is meant to protect only those wages which an employee earned *before* the termination of his employment." (emphasis in original)).

Accordingly, Count 1 is dismissed as insufficiently pleaded.

### B. Count 2—Breach of Contract

Plaintiff next asserts that Defendant breached the Earn-Out Award Agreement by terminating him without cause and by failing to pay the Earn-Out Award. (Am. Compl. ¶¶ 48–51). The Court disagrees.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege (i) the existence of a valid contract between the parties; (ii) plaintiff's performance due under that contract; (iii) defective or deficient performance under the contract by the defendant; and (iv) damages resulting from the defendant's breach. *Goldfarb v. Solimine*, 245 N.J. 326, 338, 245 A.3d 570 (2021); *see also Moya v. United Airlines*, No. 18-14829, 2019 WL 351904, at *3 (D.N.J. Jan. 29, 2019).[3] Here, Plaintiff has failed to sufficiently allege the third element—that Defendant breached the Earn-Out Award Agreement.

---

[3] The Court notes that, notwithstanding the choice of law provisions in both the Offer Letter and the Earn-Out Award Agreement providing for the application of New York law to disputes arising thereunder (*see* Offer Letter §

Notwithstanding Plaintiff's conclusory allegation that the Earn-Out Award Agreement "contain[ed] an express or implied term that [Plaintiff's] employment could only be terminated for cause" (*see* Am. Compl. ¶ 15), the Earn-Out Award Agreement clearly and unambiguously states otherwise. In particular, the Earn-Out Award Agreement makes clear that its terms were offered "in addition to, and not in substitution for" the provisions of the Offer Letter, which was executed contemporaneously therewith by the parties, and that nothing therein was intended to change Plaintiff's status as an "at-will" employee of Ness. (Earn-Out Award Agreement at 1 & § C). Plaintiff's status as an "at-will" employee of Ness was, in turn, set forth clearly and unambiguously in the Offer Letter—which provided that, subject to a two-week notice of termination requirement, Defendant was free to terminate his employment with or without cause at any time. (Offer Letter §§ 5 & 6). In other words, the express terms of both the Offer Letter and the Earn-Out Award Agreement establish that Defendant had the right terminate Plaintiff "for good reason, bad reason, or no reason at all." *See Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008).

Nor did Defendant breach the Earn-Out Award Agreement by failing to pay Plaintiff the Earn-Out Award. The Earn-Out Award Agreement states clearly that in order for Plaintiff to have been entitled to any payment of the Earn-Out Award he was required either to (i) remain in a full-time employment position with Ness through the Earn-Out Payment Date, or (ii) in order to receive

---

17; Earn-Out Award Agreement § C), the parties appear to agree that New Jersey law should apply to each of Plaintiff's common law claims, and have argued the issues in their briefs entirely under New Jersey law, with the exception of a few short footnotes in Defendant's moving brief. (*See* Mov. Br. at 10 n.4, 12 n.5 & 15 n.7). Thus, whether by waiver, implied consent, or a mutual belief that the laws of New York and New Jersey with respect to these issues are substantially the same, the Court will apply New Jersey law to Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims. *See Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., Inc.*, No. 08-4764, 2011 WL 6755838, at *5 n.8 (D.N.J. Dec. 23, 2011) ("The Court assumes that the parties may jointly agree to ignore or waive the choice of law provision in the Lease selection Ohio law and ask the court to apply New Jersey substantive law . . . either by consent or by an agreement that the law governing all the contract and contract-related claims is the same in each state implicated."); *Sluka v. Landau Uniforms, Inc.*, 383 F. Supp. 2d 649, 651 n.1 (D.N.J. 2005) (noting that employment agreement at center of dispute had choice of law provision requiring application of Tennessee law, but applying New Jersey law to contract claims because neither party suggested any difference between the states' laws and enforcement of the choice of law provision may have been waived).

80% of the value of his Earn-Out Units, be terminated without cause *after* January 1, 2020 but before the Earn-Out Payment Date. (*See* Earn-Out Award Agreement § A). Because Plaintiff did not satisfy either condition, his right to the Earn-Out Award, or any portion thereof, had not vested and was not required to be paid under the terms of the Agreement.

The Court is not persuaded by Plaintiff's suggestion that the Earn-Out Award Agreement was itself a unilateral contract that obligated Defendant to refrain from exercising its right to terminate the employment relationship at will. (Opp. Br. at 10–11). Any such reading of the Earn-Out Award Agreement would impermissibly render the Agreement's references to the Offer Letter and its explicit disclaimer reaffirming Plaintiff's at-will employment status meaningless. *Glenpointe Assocs., III v. Regency Sav. Bank*, No. 06-1690, 2006 WL 2786885, at *6 (D.N.J. Sept. 25, 2006) ("In making a determination concerning the clarity or ambiguity of the contract terms, the Court should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous.").

To that end, Plaintiff's reliance on the out-of-state case *Harwood v. Avaya*, No. 05-0828, 2007 WL 1574116 (S.D. Ohio May 25, 2007), for the proposition that an employer's offer to pay a retention bonus to an employee circumscribes its right to terminate that employee without cause prior to the vesting or payment of such bonus is misplaced. (Opp. Br. at 12). Central to that case, which concerned a retention bonus program offered to employees who were ultimately laid off prior to the vesting date for the retention bonus, was the Court's finding that the employees accepted the offered retention bonus by remaining with the company and that the offer "made no mention that the employer retained the right to layoff the employees otherwise eligible for the retention bonus." *Harwood*, 2007 WL 1574116, at *9. That is not the case here, because the Earn-Out Award Agreement makes clear that it did not alter Plaintiff's at-will employment status.

10

Plaintiff's reliance on the New Jersey Appellate Division's opinion in *Ballard v. Schoenberg*, 541 A.2d 258 (N.J. Super. Ct. App. Div. 1988), is similarly misplaced. (Opp. Br. at 10). That case concerned a claim for specific performance of an oral undertaking between a decedent and his former employee that provided that, in exchange for the employee's continued work and maintenance of the decedent's farm, he would devise the farm property to her upon his death. *See Ballard*, 541 A.2d at 259–60. The court concluded that the former employee had in fact rendered complete performance of her obligations by working on and maintaining the farm in reliance on the decedent's promise and was thus entitled to the benefit of her bargain. *Id.* at 260–61. Again, that is substantially different than the facts here, because the Earn-Out Award Agreement was expressly conditioned on Plaintiff's continued employment through either January 1, 2020 or the Earn-Out Payment Date. And because Plaintiff's employment was in fact terminated prior to either date, no right to any portion of the Earn-Out Award had yet vested.

At least one court in this district has dismissed a breach of contract claim for failure to pay a retention bonus where, as here, an employer exercised its right to terminate an individual's employment prior to the date on which the bonus was set to vest or be paid. In *Schweikert v. Baxter Healthcare Corp.*, No. 12-5876, 2015 WL 4578443 (D.N.J. July 29, 2015), an employee who had signed a retention bonus agreement with his employer to facilitate the transition of the employer's business to another jurisdiction, accepted a full-time position with a new employer and was subsequently fired from his original job prior to the vesting date of the retention bonus. *Id.* at *4–5. In granting summary judgment on the employee's breach of contract claim, the court noted that, like the Earn-Out Award Agreement here, the retention bonus agreement made clear that payment of the bonus was contingent on the employee remaining employed throughout the bonus

period and expressly preserved the employer's right to terminate the employee at any time, including prior to the end of the bonus period. *Id.* at *9–10.

Accordingly, because the Earn-Out Award Agreement both conditioned payment of the Earn-Out Award on Plaintiff's continued employment with Defendant through at least January 1, 2020 and expressly preserved Defendant's right to terminate their employment relationship with or without cause at any time, the Court concludes that Defendant did not breach the Earn-Out Award Agreement by refusing to pay Defendant the Earn-Out Award following the termination of his employment on October 31, 2019.

As such, Count 2 of the Amended Complaint is dismissed as insufficiently pleaded.

### C.  Count 3—Breach of Implied Covenant of Good Faith and Fair Dealing

In Count 3 of the Amended Complaint, Plaintiff alleges that Defendant terminated his employment to avoid paying him the Earn-Out Award in breach of the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 52–54). Under New Jersey law, a covenant of good faith and fair dealing is implicit in every contract and requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575 (1997). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Hunter v. Sterling Bank, Inc.*, No. 09-0172, 2011 WL 5921388, at *6 (D.N.J. Nov. 28, 2011) (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244, 773 A.2d 1121 (2001)). In other words, "[e]ven where the express terms of the contract are not violated, a defendant who acts with improper purpose or ill motive can be found liable for breaching the implied covenant if the breach interferes with the plaintiff's reasonable

expectations under the agreement." *Shilling v. Reassure Am. Life Ins. Co.*, No. 13-2359, 2015 WL 790143, at *5 (D.N.J. Feb. 25, 2015).

There is some tension in the case law as to the proper scope and application of the implied covenant of good faith and fair dealing in the at-will employment context. On the one hand, the implied covenant of good faith and fair dealing "attaches to those aspects of an at-will employment relationship which are governed by some contractual terms." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 390 (D.N.J. 1999). Moreover, under New Jersey law, unlike that of many other states, where a contract vests a party thereto with discretion, including an express and unconditional right to terminate, the implied covenant of good faith and fair dealing requires that party to exercise such discretion "reasonably and with proper motive." *Schweikert*, 2015 WL 4578443, at *13 (quotations omitted). On the other hand, however, courts have routinely noted that the implied covenant will not "work to limit an employer's discretion in terminating at will employees." *Pepe*, 85 F. Supp. 2d at 390; *see also Argush v. LPL Fin. LLC*, No. 13-7821, 2014 WL 3844822, at *4 (D.N.J. Aug. 5, 2014); *Grygorcewicz v. Schweitzer-Mauduit Int'l, Inc.*, No. 08-4370, 2009 WL 235623, at *2 (D.N.J. Jan. 30, 2009) (quoting *Scudder v. Media Gen.*, No. 95-1073, 1995 WL 495945, at *6 (D.N.J. Aug. 15, 1995)). To that end, the parties have not cited, nor has the Court found, any cases holding that the implied covenant of good faith and fair dealing "imposes on an employer a contractual obligation to provide continued employment or to fire only for good cause." *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 607 (D.N.J. 2003) (quoting *Barone v. Leukemia Soc'y of Am.*, 42 F. Supp. 2d 452, 458 (D.N.J. 1998)).

It appears, therefore, to be an open question under New Jersey law whether and how the implied covenant of good faith and fair dealing attaches to bonus plans or agreements that expressly condition payment thereof on the continued employment on some future date of an

otherwise at-will employee. Here, the essence of Plaintiff's claim is that Defendant exercised its discretion to terminate Plaintiff's employment in bad faith and for the specific purpose of avoiding the obligation to pay him any portion of the Earn-Out Award. Plaintiff's claim does not invoke the implied covenant of good faith and fair dealing with respect to his termination *per se*. In other words, Plaintiff does not allege that Defendant breached the implied covenant of good faith and fair dealing merely by terminating his employment. Rather, Plaintiff alleges that Defendant breached the implied covenant by terminating his employment for the sole purpose of avoiding payment of the Earn-Out Award. Notwithstanding the parties' at-will relationship, Plaintiff alleges that Defendant had a duty to exercise its discretion in good faith, and that Defendant breached that duty by terminating Plaintiff's employment two months prior to the vesting of his right to some portion of the Earn-Out Award for the specific purpose of withholding payment thereof, thereby frustrating his reasonable expectations under the Earn-Out Award Agreement. (Am. Compl. ¶¶ 53–54).

Accepting Plaintiff's allegations as true and giving Plaintiff the benefit of every favorable inference therefrom, as the Court must when considering a Rule 12(b)(6) motion, the Court finds that Plaintiff has sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing. *Cf. Schweikert*, 2015 WL 4578443, at *13–14 (dismissing on summary judgment breach of implied covenant of good faith and fair dealing claim with respect to retention bonus agreement because plaintiff could not point to any record evidence demonstrating defendant's bad faith or ill motive in terminating his employment and denying bonus payment); *Cioni v. Globe Specialty Metals, Inc.*, No. 10-1388, 2014 WL 2965707, at *8 (D.N.J. July 1, 2014) (dismissing breach of implied covenant claim where plaintiff did not allege in complaint that his employment was terminated in bad faith the purpose of denying his right to stock options).

Defendant argues that the implied covenant claim can neither override the express terms of the Earn-Out Award Agreement nor be based on the same conduct supporting Plaintiff's breach of contract claim. (Mov. Br. at 12–13; D.E. No. 13, Reply at 9). Neither argument, however, is persuasive.

First, as the Court has already noted, New Jersey law recognizes claims for breaches of the implied covenant of good faith and fair dealing both to "allow redress for the bad faith performance of an agreement even when the defendant has not breached any express term" and to "permit inquiry into a party's exercise of discretion expressly granted by a contract's terms." *Barrett Fin. Of N. Jersey, LLC v. Creative Fin. Grp. of N.J.*, No. 13-5621, 2019 WL 2067552, at *5 (D.N.J. May 10, 2019) (quoting *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002)); *see also Hills v. Bank of Am.*, No. 13-4960, 2015 WL 1205007, at *4 (D.N.J. Mar. 17, 2015) (noting circumstances in which independent cause of action for breach of implied covenant of good faith and fair dealing exists under New Jersey law). Plaintiff's claim falls squarely within this framework and therefore does not impermissibly override the express terms of the Earn-Out Award Agreement. *See Vosough v. Kierce*, 97 A.3d 1150, 1166 (N.J. Super. Ct. App. Div. 2014) (noting existence of exceptions to at-will employment doctrine including "bad faith interference with the other party's right to benefit from the 'fruits of the contract' . . . despite the right of the party that acted in bad faith to terminate an at-will contract").

Second, Count III is not duplicative of Plaintiff's breach of contract claim in Count II. The Court has already found that Plaintiff has failed to allege a plausible breach of contract claim because the express terms of the Earn-Out Award Agreement, and the incorporated terms of the Offer Letter, unambiguously granted Defendant the right to terminate Plaintiff's employment for any reason and did not, as Plaintiff alleges, create an express or implied term that Plaintiff could

15

only be terminated for cause. That, however, is not the basis of Plaintiff's breach of implied covenant claim, which alleges that, if Defendant exercised its discretion to terminate Plaintiff's employment as provided by the Earn-Out Award Agreement and Offer Letter, it did so in bad faith for the purpose of denying Plaintiff the fruits of the Earn-Out Award Agreement. *See Grande Village LLC v. CIBC Inc.*, No. 14-3495, 2015 WL 1004236, at *7–8 (D.N.J. Mar. 6, 2015). As such, Plaintiff's implied covenant claim is not duplicative of his now-dismissed breach of contract claim.

Accordingly, Count 3 is dismissed as sufficiently pleaded.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion (D.E. No. 8) is GRANTED in part and DENIED in part. Counts 1 and 2 are dismissed and Count 3 may proceed. Because dismissal of Counts 1 and 2 are based on the clear terms of governing contracts, the Court finds that any attempt at amendment would be futile. *See Morel v. Goya Foods, Inc.*, No. 20-5551, 2022 WL 263437, at *5 (D.N.J. Jan. 28, 2022). Accordingly, those counts are dismissed *with prejudice*. An appropriate Order follows.

Dated: June 6, 2022                                                      Esther Salas, U.S.D.J.